**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| RYNE MCBRIDE and RORY JONES | : |
| | : |
| Plaintiffs, | : |
| | : CIVIL ACTION NO. |
| v. | : 1:10-CV-2376-RWS |
| | : |
| GAMESTOP, INC., | : |
| | : |
| Defendant. | : |

## **ORDER**

This case is before the Court on Defendant's Motion to Dismiss or, in the Alternative, to Compel Arbitration and Stay the Judicial Proceedings [4]. After reviewing the entire record, the Court enters the following Order.

## **Background**

Ryne McBride and Rory Jones (collectively, "Plaintiffs") brought this action against Gamestop, Inc., ("Gamestop" or "Defendant") asserting claims arising under the Fair Labor Standards Act of 1938. Compl., Dkt. No. [1-1] at ¶ 9. Plaintiffs were employed by Defendant between 2005 and 2009 at the Medlock Bridge location.[1] Id. at ¶¶ 4-5; Plaintiffs' Memorandum in Opposition to

---

[1] Defendant refers to the store as the "Duluth" store whereas Plaintiffs state it is located in "Johns Creek, Georgia." Compare Aff. Broyles, Dkt. No. [7-1] at ¶ 4 with

Defendant's Motion to Dismiss, or in the Alternative, Motion to Compel Arbitration and Stay the Judicial Proceedings ("Pl's Response"), Dkt. No. [6] at 1; Aff. Broyles, Dkt. No. [7-1] at ¶ 4.

Defendant claims that Plaintiffs are barred from bringing their claim in court because they entered into an agreement that included a multi-tiered dispute resolution clause, "Gamestop C.A.R.E.S. Rules of Dispute Resolution" ("Arbitration Agreement"), which stated that the parties would ultimately arbitrate any legal disputes that arose between them. Memorandum in Support of Defendant's Motion to Dismiss or, in the Alternative, to Compel Arbitration and Stay the Judicial Proceedings ("Def's Memo"), Dkt. No. [4-1] at 3. Defendant contends that Plaintiffs' Fair Labor Standards Act claims are covered by the Arbitration Agreement. Id. at 4.

Specifically, Defendant states that Plaintiffs acknowledged their consent to the Arbitration Agreement when they signed a "Gamestop C.A.R.E.S. Acknowledgment Form" ("Acknowledgment Form") in October 2007. Def's Memo, Dkt. No. [4-1] at 5. This form acknowledged that the Plaintiffs had received a copy of the C.A.R.E.S. Rules and a brochure which summarized the Gamestop C.A.R.E.S. process and specifically included the arbitration clause. Aff.

---

Pl's Response, Dkt. No. [6] at 1. For the Court's purposes, it will be referred to as the Medlock Bridge Store, pursuant to its street address.

2

Broyles, Dkt. No. [7-1] at ¶ 17.  Further, Defendant asserts that the Store Manager provided the brochure to every employee in the Medlock Bridge store.  Id. at ¶ 19. But, Defendants argue, even if Plaintiffs never received a copy of the Arbitration Agreement, they were on notice of the clause and that continued employment was conditioned on such agreement because their direct supervisor spoke to them about it, a flowchart visually depicting the C.A.R.E.S. process was posted on the wall of the store where Plaintiffs worked, the C.A.R.E.S. Rules were made available in the in-store Procedure Manual, and the C.A.R.E.S. Rules were available on Gamestop's intranet.  See id. at ¶¶ 13-20.

Plaintiffs do not deny signing the Acknowledgment Form, however they assert that they never received an actual copy of the Arbitration Agreement.  Aff. McBride, Dkt. No. [6-1] at 3; Aff. Jones, Dkt. No. [6-1] at 5.  Plaintiffs state that they only signed the Acknowledgment Form because their manager stated that if they did not sign the form, they would receive a reduction in their hours.  Aff. McBride, Dkt. No. [6-1] at 3; Aff. Jones, Dkt. No. [6-1] at 5. Plaintiffs argue that while they may have signed a form acknowledging the receipt of the Arbitration Agreement, they never actually consented to the terms of the Agreement. Aff. McBride, Dkt. No. [6-1] at 3; Aff. Jones, Dkt. No. [6-1] at 5.

In light of Plaintiffs' responses outlined above, Gamestop brings the present Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Compel Arbitration and Stay the Judicial Proceedings, asserting that the parties entered into a legally binding Arbitration Agreement which bars Plaintiffs from bringing the present action.  The Court now examines Defendant's assertions.

## Discussion

The Federal Arbitration Act is "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  The FAA has instituted a policy "favoring arbitration agreements" and its main goal is "moving the parties to an arbitrable dispute out of court and into arbitration as quickly as possible." Green Tree Fin. Corp-Alabama v. Randolph, 531 U.S. 79, 85 (2000) (citing Moses 460 U.S. at 22).  Further, the FAA establishes that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Id. at 24-5.  With this as background, the Court turns to address the merits Defendant's Motion to Dismiss.

4

AO 72A
(Rev.8/82)

In order to determine whether arbitration should be compelled, the Court assesses whether "(1) there is a valid written agreement to arbitrate; (2) the issue [sought to be arbitrated] is arbitrable under the agreement; and (3) the party asserting the claims has failed or refused to arbitrate the claims." Lomax v. Woodmen of the World Life Ins. Soc'y, 228 F. Supp. 2d 1360, 1362 (N.D. Ga. 2002). Here, it is undisputed that prongs two and three are met. Pl's Response, Dkt. No. [6] at 4. Thus, the only issue is whether there exists a valid written agreement to arbitrate.

In order to determine whether a valid and enforceable agreement was entered into between the parties, Georgia contract law governs. Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1368 (11th Cir.2005) (finding that "state law generally governs whether an enforceable contract or agreement to arbitrate exists"). Under Georgia contract law, "[a] definite offer and complete acceptance, for consideration, create a binding contract." Moreno v. Strickland, 567 S.E.2d 90, 92 (Ga. Ct. App. 2002). Plaintiffs do not challenge consideration; thus, whether the elements of offer and acceptance were satisfied are the only elements at issue. Pl's Response, Dkt. No. [6] at 5.

**(1) Offer**

"An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Caley, 428 F.3d at 1373 (citing RESTATEMENT (SECOND) OF CONTRACTS § 24) (applying Georgia law). Gamestop alleges that it made an offer through numerous efforts, including: distributing a brochure of the C.A.R.E.S. policy; having Plaintiffs' direct supervisor discuss the policy with them; visually depicting the policy in a flowchart which was displayed in all Gamestop store locations; and making the policy available in a store manual and on the Gamestop intranet. Aff. Broyles, Dkt. No. [7-1] at ¶¶ 13-20. Plaintiffs only contest actually receiving the brochure.

Further, Plaintiffs were informed at the time they signed the Acknowledgment Form that if they did not sign the form, they would not be scheduled for work and their hours would be reduced. Pl's Response, Dkt. No. [6] at 2. Thus, a reasonably prudent person would have understood that by signing or failing to sign the acknowledgment, consequences regarding their employment would result. See Caley 428 F.3d at 1374 (stating that under Georgia law, "[a] promise is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been

6

made"). Consequently, it is clear that an offer was made to the Plaintiffs regarding the Arbitration Agreement.

**(2) Acceptance**

In this case, the Plaintiffs' signatures on the Acknowledgment Form demonstrate that they were, at a minimum, aware of the Arbitration Agreement, and they are bound by what they sign. Charles S. Martin Distrib. Co. v. Bernhardt Furniture Co., 445 S.E.2d 297, 299 (Ga. Ct. App. 1994) (stating that "[t]here are few rules of law more fundamental than that which requires a party to read what he signs and to be bound thereby"). Under Georgia law, Plaintiffs also had a duty to read the Arbitration Agreement incorporated by the Acknowledgment Form before signing that they received the Agreement. Id. (finding that the Plaintiff had a duty to read the document that was incorporated by the paper that he signed).

Further, in addition to Plaintiffs' signatures, which manifest that they received the brochure, Gamestop's numerous actions of distributing and displaying information about the C.A.R.E.S. process would have put a reasonably prudent employee on notice of the agreement to arbitrate. Once Plaintiffs became aware of the Arbitration Agreement, their continued employment constituted acceptance

7

of the Arbitration Agreement's terms.  Caley, 428 F.3d at 1374 (citing Fletcher v. Amax, Inc., 288 S.E.2d 49, 57 (Ga. Ct. App. 1981)).[2]

The federal policy in favor of arbitration still controls even when applying state law.  Id. at 1368 (citing Cooper v. MRM Inv. Co., 367 F.3d 493, 498 (6th Cir. 2004) (stating that the "federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law" )). Thus, the Court concludes that a valid and enforceable Arbitration Agreement was entered into between the parties under Georgia Law.  Finding that Plaintiffs are bound by the Arbitration Agreement, Plaintiffs' claims are **DISMISSED**.

## Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss [4] is **GRANTED**.

**SO ORDERED**, this   8th   day of February, 2011.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

---

[2] Further, the Arbitration Agreement stated: "By accepting the this offer of employment, or by continuing employment, with GameStop and its affiliates after the effective date, you agree to use GameStop C.A.R.E.S. to resolve workplace disputes and claims, including legal and statutory claims arising out of your employment..."C.A.R.E.S. Brochure, Dkt. No. [7-1] at 27.

8